IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DANTE JACKSON,
    Plaintiff
    v.

CITY OF PHILADELPHIA, et al.,
    Defendants.

Civil Action
No. 16-3892

## MEMORANDUM

Jones, II. J.                                                                                       February 22, 2019

### I. Introduction

Plaintiff Dante Jackson, a former inmate at the Philadelphia Industrial Correctional Center (PICC), filed this civil rights action under 42 U.S.C. § 1983 against, *inter alia*, Correctional Lieutenant Murray, Correctional Sergeant Mooney, and Correctional Officer Johnson ("Moving Defendants") in their individual, supervisory and official capacities. Plaintiff alleged numerous constitutional violations stemming from events said to have occurred while he was a PICC inmate from August 2014 to October 2014.

In response to Plaintiff's Third Amended Complaint, Defendants filed the instant Motion to Dismiss for failure to state a claim, arguing Plaintiff's claims against all Moving Defendants are barred by the two-year statute of limitations and Plaintiff failed to state a claim against Officer Johnson because he alleged no facts involving Officer Johnson. For the reasons set forth herein, Defendants' Motion to Dismiss will be granted.

### II. Background

On August 15, 2014, Defendants were employed at PICC as Correctional staff, and Plaintiff Dante Jackson was incarcerated at the same facility. (Third Am. Compl. ¶¶ 5, 11–12, 18.) Between August 15, 2014 and August 17, 2014, Plaintiff was interrogated by PICC staff in

1

connection with an alleged assault on a prison social worker. (Third Am. Compl. ¶ 21.) Plaintiff denied having any knowledge regarding the assault and Defendant Murray refused to accept his denials. (Third Am. Compl. ¶ 23.) In spite of Plaintiff's response, on August 18, 2014, Defendant Murray produced a statement for ratification by Plaintiff saying that Plaintiff witnessed the assault and identified a perpetrator. (Third Am. Compl. ¶¶ 23–24.) Defendant Murray threatened Plaintiff with "severe consequences," including transfer to the Restrictive Housing Unit ("RHU"), if he did not sign the statement. (Third Am. Compl. ¶¶ 24–25.) Plaintiff refused to sign it. (Third Am. Compl. ¶ 23.)

On August 19, 2014, Defendant Murray allegedly fraudulently filed those documents on Plaintiff's behalf, and placed Plaintiff in the RHU on 23-hour cell restriction. (Third Am. Compl. ¶ 26–27.) Afterwards, Plaintiff contends Defendant Mooney subjected him to daily strip searches and deprived him of physical and outdoor recreation. (Third Am. Compl. ¶ 28.)

Plaintiff further alleges physical abuse at the hands of Defendant Mooney. (Third Am. Compl. ¶¶ 42–43.) Plaintiff pleads that on October 2, 2014, Defendant Mooney and another correctional officer pushed Plaintiff into an area of PICC that was not monitored by video surveillance and struck him numerous times and slammed his head into the cell wall, a metal sink, and a toilet. (Third Am. Compl. ¶ 42.) Plaintiff further alleges that on October 7, 2014, he filed a grievance with PICC regarding the assault, and, in retaliation, Defendant Mooney and another correctional officer served Plaintiff unsealed food trays containing dirt and spit. (Third Am. Compl. ¶¶ 46–48.)

Although Plaintiff filed multiple grievances against the PICC correctional staff, those complaints were ignored. (Third Am. Compl. ¶ 46–48.) Plaintiff contends he was transferred from PICC on October 24, 2014 without appropriate redress for the serious physical injury and

2

emotional distress he sustained as a result of Defendants' conduct. (Third Am. Compl. ¶¶ 50–56.)

On July 18, 2016, Plaintiff, acting pro se, filed a request to proceed *in forma pauperis* (IFP) and attached a Complaint. His request to proceed IFP was denied without prejudice on July 26, 2016 (ECF No. 2) and his Complaint was not docketed. On August 15, 2018, Plaintiff again applied for permission to proceed IFP (ECF No. 5), and on August 22, 2016, he requested leave to file an amended complaint (ECF No. 7). Plaintiff's Amended Complaint named the City of Philadelphia, Lieutenant Murray, Officer Watkins, PICC Warden Karen Bryant, and prison healthcare provider Corizon Inc. as defendants. (ECF No. 11.) It did not name Moving Defendant Mooney. On September 22, 2016, this Court granted Plaintiff's request to proceed IFP, ordered that his Amended Complaint be docketed, and that summons be issued and served on all named Defendants by the U.S. Marshal's service. (ECF Nos. 9-11.) As of December 2017, no Defendants were served. On December 7, 2017, Plaintiff filed a formal request that defendants be served (ECF No. 14). On December 8, 2017, Plaintiff filed a second Amended Complaint, which included all Moving Defendants (ECF No. 16.) That same day, summonses issued as to all original Defendants and all late-added Defendants, including Moving Defendants. However, no Defendants were served before April 19, 2017—approximately two and a half years after the events giving rise to Plaintiff's claims occurred. *See* ECF No. 22.

On June 26, 2017, Plaintiff filed a counseled Third Amended Complaint (ECF No. 27), pleading four violations of 42 U.S.C. § 1983: (1) deliberate indifference; (2) violations of Plaintiff's Fourth and Fourteenth Amendment rights under the statute; (3) violation of Plaintiff's Fifth and Fourteenth Amendment rights under the statute; and, (4) violation of Plaintiff's Eighth Amendment rights. (Third Am. Compl. ¶¶ 57–71.) Moving Defendants' 12(b)(6) motion does

3

not dispute the factual allegations of physical and emotional abuse contained within the Third Amended Complaint. Instead, they make two procedural arguments. First, they argue Plaintiffs' lawsuit is barred by Pennsylvania's two-year statute of limitations for § 1983 claims. (Defs.' Mot. Dismiss 6.) Second, Moving Defendants argue Plaintiff's claims against Officer Johnson fail because Plaintiff did not allege any particular involvement by Officer Johnson. (Defs.' Mot. Dismiss 9.)

### III. Standard of Review

In deciding a Rule 12(b)(6) motion, courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citation omitted). Nevertheless, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citation omitted). This standard, which applies to all civil cases, "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "[A]ll civil complaints must now set out sufficient factual matter to show that the claim is facially plausible." *Fowler*, 578 F.3d at 210 (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

4

## IV. Discussion

### A. Officer Johnson's Involvement

Moving Defendants argue Plaintiff's claims against Officer Johnson should be dismissed because Plaintiff failed to allege any personal involvement by Officer Johnson. (Defs.' Mot. Dismiss 9.) Moving Defendants are correct that Plaintiff did not plead any personal involvement by Officer Johnson. Plaintiff only alleges Officer Johnson's employment and duties at the PICC. (Third Am. Compl. ¶ 11.) He makes allegations involving "defendants" generally, but pleads no facts involving Officer Johnson in particular. Plaintiff responds that under the Rule 12(b)(6) standard of review, favorable toward the non-moving party, his pleadings regarding Officer Johnson are plausible and should entitle him to discovery with respect to Officer Johnson. (Pl.'s Resp. Opp'n 13-14.) Plaintiff's contentions are not persuasive. As cited by Plaintiff himself, the Third Circuit requires a plaintiff to "identify[] the particular conduct of defendants that is alleged to have harmed the plaintiffs." *Colburn v. Upper Darby Township*, 838 F.2d 663, 666 (3d Cir. 1988). Plaintiff alleged no particular conduct of Officer Johnson. In the Third Circuit, a theory of § 1983 liability based on a prison guard's status as custodian of a prisoner is not viable absent personal participation. *Gandy v. Graterford*, 646 Fed. Appx. 144, 145 (3d Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Rode v Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (requiring that allegations "be made with appropriate particularity")). Aside from a description of Officer Johnson's supervisory role at the PICC, and a generic contention that he "acted or failed to act ... under color of state law" (Third Am. Compl. ¶ 11), Plaintiff does not

5

plead any personal participation by Officer Johnson.[1] Accordingly, Moving Defendants' Motion to Dismiss Plaintiff's claims against Officer Johnson will be granted.

**B. Statute of Limitations**

Moving Defendants also argue Plaintiffs' lawsuit is barred by Pennsylvania's two-year statute of limitations for § 1983 claims. (Defs.' Mot. Dismiss 6.) Claims brought under § 1983 are subject to the state's statute of limitations for personal injury actions, which, in Pennsylvania, is two years. *Garvin v. City of Philadelphia*, 354 F. 3d 215, 220 (3d Cir. 2003); 42 Pa. Cons. Stat. § 5524 (West 2018). "[T]he limitations period begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action." *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 919 (3d Cir. 1991)); *Romero v. The Allstate Corp.*, 404 F.3d 212, 221 (3d Cir. 2005). A plaintiff must commence an action prior to expiration of the limitations period. 42 Pa. Cons. Stat. § 5524 (West 2018). In Pennsylvania, an action is commenced upon filing a complaint. Pa. R. Civ. P. 1007. Plaintiff named Lieutenant Murray and Sergeant Mooney outside of the prescribed statute of limitations,[2] therefore his claims against them are barred unless he can satisfy the requirements of relation back given as provided in Federal Rule of Civil Procedure 15(c).

---

[1] Plaintiff alleged particular actions by Lieutenant Murray and Sergeant Mooney. (Third Am. Compl. ¶¶ 23-28, 42, 48.) He also alleged particular inactions by other defendants. (Third Am. Compl. ¶¶ 31-32, 44.) He alleged neither with respect to Officer Johnson.

[2] Lieutenant Murray was named earlier than Sergeant Mooney—in the First Amended Complaint, docketed on September 22, 2016. (ECF No. 11.) Sergeant Mooney was named in the Second Amended Complaint, docketed on December 8, 2016. (ECF No. 16.) However, the offending conduct ascribed to Lieutenant Murray by Plaintiff likewise occurred earlier—between August 18, 2014 and August 19, 2014. (Third Am. Compl. ¶¶ 23-27.) Plaintiff's allegations involving Sergeant Mooney span from August 19, 2014 to, at the latest, October 24, 2014. (Third Am. Compl. ¶¶ 27-34, 39-50.) Thus both Lieutenant Murray and Sergeant Mooney were named more than two years after the respective times when Plaintiff knew of the injury which is the basis of his § 1983 action against each of them.

### 1. Relation Back under Fed. R. Civ. P. 15(c).

Rule 15(c) requires that three conditions be met for an amended complaint that seeks to change a defendant or to change the naming of a defendant, to relate back to the original complaint for statute of limitations purposes: (1) The amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading, (2) within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment received such notice of the action that it will not be prejudiced in defending on the merits; and (3) said party knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity. Fed. R. Civ. P. 15(c). The plaintiff bears the burden of establishing the requirements of relation back under Rule 15(c). *Markhorst v. Ridgid, Inc*, CIVIL ACTON NO. 06-2345, 480 F. Supp. 2d 813, 814 (E.D. Pa. Mar. 30, 2007) (citing cases).

The parties do not dispute that the claims set forth in Plaintiff's Third Amended Complaint arose out of the same conduct or occurrence set out in the original pleading. Rather, they dispute notice.

a. Notice

Absent evidence that the newly added defendants had actual notice of the lawsuit prior to expiration of the statute of limitations, a plaintiff may still demonstrate constructive notice under Fed. R. Civ. P. 15(c) through the "shared attorney" or the "identity of interest" relation back methods. *Garvin*, 354 F.3d at 223-24 (3d Cir. 2003).

i. Shared Attorney

The "shared attorney" method is based on the theory that where the "originally named party and the party who is sought to be added are represented by the same attorney, the attorney

7

is likely to have communicated to the latter party that he may very well be joined in the action." *Singletary v. Pennsylvania Dept. of Corrections*, 266 F.3d 186, 196 (3d Cir. 2001). To satisfy the shared attorney method, a plaintiff must demonstrate that there was "some communication or relationship" between the attorney for the original defendants and the parties sought to be added as defendants prior to the expiration of the 90-day period for service of the summons and complaint. *Garvin*, 354 F.3d at 225.

The *Garvin* court held that notice was not imputed to the newly added officers under the shared attorney method because "the four newly named defendants were not and are not currently represented by the [same] City's attorney." *Id.* at 223. Although Moving Defendants here are represented by an assistant city solicitor who also represents at least one potentially timely-added defendant, said attorney entered an appearance almost ten (10) months after expiration of the applicable statute of limitations (ECF No. 36), and approximately eight (8) months after expiration of the 4(m) period. Thus, Plaintiff cannot demonstrate "'some communication or relationship' between the shared attorney and the [newly added] defendant[s] prior to the expiration of the [90-day] period" and Plaintiff's complaint does not relate back under the shared attorney method. *Garvin*, 354 F.3d at 225.

Furthermore, the fact that the original attorney and the current attorney are employed by the same municipal office is of no bearing, because the Third Circuit has distanced itself from the theory that likely shared or collective representation by a City attorney's office alone is sufficient to demonstrate the "communication or relationship" necessary to impute notice to newly named officers. *Id.* at 227 (declining to follow *Jacobsen v. Osborne*, 133 F.3d 315 (5th Cir. 1998) and reasoning that imputation of notice through the shared representation by a City Solicitor's Office would require courts to "pile assumption on top of assumption . . . .")).

Therefore, Plaintiff cannot demonstrate constructive notice under Fed. R. Civ. P. 15(c) through the "shared attorney" relation back method.

ii. Identity of Interest

The "identity of interest" method arguably encompasses the shared attorney method. *Singletary*, 266 F.3d at 197. However, despite the relatedness of the two methods, the Third Circuit evaluates them separately. *Id*. To satisfy the identity of interest method, a plaintiff must demonstrate that "the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other of pending litigation." *Garvin*, 354 F.3d at 227; *see also Singletary*, 266 F.3d at 197.

In *Singletary*, after surveying § 1983 cases involving constructive notice shown through identity of interest, the Third Circuit held that a staff-level prison employee's position could not serve as a basis for finding identity of interest, because the employee had no "supervisory or administrative duties" and was "not highly enough placed in the prison hierarchy ... to conclude that his interests as an employee are identical to the prison's interests." *Singletary*, 266 F.3d at 198-99 (citing *Ayala Serrano v. Lebron Gonzalez*, 909 F.2d 8, 13 (1st Cir. 1990) (imputing notice to a late-named prison guard where officials at the same prison had received timely notice of a lawsuit by a prisoner); *Jacobsen v Osborne*, 133 F.3d 315, 320 (5th Cir. 1998) (imputing notice where a plaintiff timely named a city and one police officer in a § 1983 action and later sought to name other police officers who were involved in the wrongdoing alleged); *Keitt v. Doe*, 1994 WL 385333 at *6 (E.D. Pa. July 22, 1994) (declining to impute notice to non-management employees because they "do not bear a sufficient nexus with their employer to permit a conclusion that they share an identity of interest in the litigation so as to permit the presumption that they received [timely] notice that they would be sued simply because their employer had

9

timely notice.")). In *Garvin*, the Third Circuit declined to impute notice to late-added officers under the identity of interest method because the officers were non-management employees, and therefore did not share a sufficient nexus of interests with their employer such that notice given to the employer could be imputed to the employees. *See Garvin*, 354 F.3d at 227. Ultimately, the overarching inquiry is whether "the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other of pending litigation." *Garvin*, 354 F.3d at 227; *Singletary*, 266 F.3d at 197.

Here, Lieutenant Murray and Sergeant Mooney, by virtue of their ranks, hold supervisory positions within the correctional facility.[3] Furthermore, Plaintiff alleges Moving Defendants were "assigned to supervise Officers and inmates on the 'J Block' unit" of PICC. (Third Am. Compl. ¶¶ 5, 12.) Thus, accepting all factual allegations as true, and construing the complaint in the light most favorable to the plaintiff as this Court is required to do, *see Phillips*, 515 F.3d at 233, Moving Defendants Murray and Mooney shall be considered supervisory employees for purposes of this analysis.

Even applying supervisory status to Defendants Murray and Mooney, notice of suit cannot be imputed to them by Plaintiff's timely naming the City of Philadelphia because, as mid-

---

[3] The City of Philadelphia Personnel Department website describes the rank of Correctional Sergeant and Lieutenant as the first and second supervisory level, respectively. *Correctional Lieutenant*, Phila.gov https://www.phila.gov/personnel/specs/5H06.htm (last visited Jan. 10, 2019); *Correctional Sergeant*, Phila.gov https://www.phila.gov/personnel/specs/5H05.htm (last visited Jan. 10, 2019). In fact, Correctional Lieutenants work closely with their subordinate Correctional Sergeants to supervise subordinate correctional officers, oversee the custody of inmates, and maintain security and order within the correctional institution. *Id. See also* Mary Ann Farkas & P. K. Manning, *The Occupational Culture Of Corrections And Police Officers*, 20 J. Of Crime & Just. 51, 55-68 (1997) (describing general correctional rank structure in ascending order as Officer, Corporal, Sergeant, Lieutenant, Captain and Major).

10

level employees of one of many City departments, Moving Defendants are "not highly enough placed in the [City] hierarchy ... to conclude that [their] interests as ... employee[s] are identical to the [City]'s interests." *Singletary*, 266 F.3d at 199. However, in light of their supervisory correctional positions at PICC, it is plausible that, unlike the non-managerial, staff-level employees with no supervisory or administrative duties in *Garvin* and *Singletary*, Moving Defendants Murray and Mooney had a sufficiently close business relationship with PICC Warden Karen Bryant, who was timely named, to support imputation of notice. *See Garvin*, 354 F.3d at 227; *Singletary*, 266 F.3d at 197. Accordingly, notice could be imputed through Warden Bryant under the "identity of interest" method as to Moving Defendants Murray and Mooney.

This, however, is not the end of the inquiry. Plaintiff must demonstrate that Moving Defendants received notice of the suit within the 90-day time period provided in Rule 4(m).[4] *Garvin*, 354 F.3d at 222 (quoting *Singletary*, 266 F.3d at 194). Plaintiff cannot show this because Warden Bryant herself was not served prior to expiration of the 4(m) period, therefore timely notice may not be imputed to Defendants through the Warden. *See* ECF No. 22 (indicating Warden Bryant was served on April 19, 2017 - -approximately seven (7) months after filing of the Amended Complaint that named Warden Bryant).

This still does not end the inquiry. Rule 4(m) allows the court to extend the time for service "an appropriate period" if a plaintiff shows good cause. Fed. R. Civ. P. 4(m). "'Good cause' is not defined in the Federal Rules; however, most courts determine whether good cause

---

[4] The Rule 4 time period for service is suspended while the district court makes a determination regarding a request to proceed *in forma pauperis* (IFP) if such a request is made within the limitations period. *Urrutia v. Harrisburg County Police Dep't*, 91 F.3d 451 (3d Cir. 1996). However, in this case, the IFP approval and service of the Amended Complaint were ordered at the same time so the 4(m) period commenced on the same date IFP status was granted and the 4(m) period was not subject to tolling. (ECF Nos. 9, 11.)

11

excuses plaintiff's failure to serve within the [time] period by considering whether plaintiff has made reasonable and diligent efforts to accomplish service during the period prescribed by [the Rules]." *Cross v. Glenn*, CIVIL ACTION No. 91-5774, 1992 U.S. Dist. LEXIS 18374, at *7-8 (E.D. Pa. Nov. 25, 1992) (citing *Lovelace v. Acme Markets, Inc.*, 820 F.2d 81, 84-85 (3d Cir. 1987) and other E.D. Pa cases). Inasmuch as the docket shows Plaintiff wrote the court to urge service (ECF No. 14.), the docket reflects some diligence on Plaintiff's part. Furthermore, the docket reflects that the U.S. Marshal's Service did not timely effect service of process,[5] whereas a plaintiff proceeding *in forma pauperis* is entitled to rely on the Marshals to properly effect service of process. *Cross v Glenn*, CIVIL ACTION No. 91-5774, 1992 U.S. Dist. LEXIS 18374, *9-10 (E.D. Pa. Nov. 25, 1992) (citing appellate decisions). Therefore, because Plaintiff endeavored to expedite service of process and because Plaintiff may not fairly be penalized for the Marshal's Service's failure to timely effect service of process, this Court, in its discretion, will extend his time for service pursuant to Rule 4(m) to the point of service of Warden Bryant and will not base dismissal of his Third Amended Complaint on lack of notice.

  b. Prejudice

By its terms, Rule 15(c) requires more than just notice—it requires sufficient notice such that the party to be brought in "will not be prejudiced in defending on the merits." Fed. R. Civ. P. 15(c)(1)(C)(i). *See also Lundy v. Adamar of New Jersey*, 34 F.3d 1173, 1188 (3d Cir. 1994). Plaintiff must establish this element. *Markhorst v. Ridgid, Inc.*, CIVIL ACTON NO. 06-2345, 480 F. Supp. 2d 813, 814 (E.D. Pa. Mar. 30, 2007) (citing cases). *Cf. Fagan v. Fischer*, 2016 U S. Dist. LEXIS 10042, *25, 2016 WL 347318 ("[O]nce a defendant has raised a statute of

---

[5] This Court ordered service on Warden Bryant by the U.S. Marshal's Service on September 22, 2016 and again on December 8, 2016 before service was finally effected on April 19, 2017 (ECF Nos. 9, 15, 22).

12

limitations defense to a claim, [it] is the plaintiff's burden to establish the facts necessary to justify the application of ... tolling; it is not ... the defendant's burden to show that ... tolling does not apply.").

"The prejudice to which the Rule refers is that suffered by one who, for lack of timely notice that a suit has been instituted, must set about assembling evidence and constructing a defense when the case is already stale." *Garvin*, 354 F.3d at 220. This requirement speaks to the purpose of limitations statutes themselves, which "are intended to foreclose the potential for inaccuracy and unfairness that stale evidence and dull memories may occasion in an unduly delayed trial." *United States v. Levine*, 658 F.2d 113, 127 (3d Cir. 1981). In this case, no defendant received notice of the suit until two and a half years after the events giving rise to the claims occurred and about six months after the statute of limitations expired.

"However, age alone does not determine whether information is stale. Rather, the reviewing court must also examine the nature of the [offense] and the type of evidence." *United States v. Lawrence*, CRIMINAL NO. 3:13-41, 2015 U.S. Dist. LEXIS 167622, *1 (W.D. Pa. Dec. 15, 2015). *See also United States v. Caple*, No. 3:07cr394, 2008 U.S. Dist. LEXIS 98966, *44 (M.D. Pa. Dec. 8, 2008) (stating same). A non-exhaustive survey shows courts in this Circuit have considered steps that were taken to preserve evidence, *see Steele v. HCI Direct*, CIVIL ACTION NO. 02-4347, 2004 U.S. Dist. LEXIS 14595, *6-7 (E.D. Pa. Jul. 27, 2004), whether the evidence will "disappear overnight," *United States v. Branham*, Criminal No. 86-63-JRR, 1987 U.S. Dist. LEXIS 4821, *34 (D. Del. Jun. 5, 1987), and whether the events giving rise to the claims were of protracted or limited duration, *see United States v. Urban*, 404 F.3d 754, 775, (3d Cir. 2005) (viewing information about events that occurred over the course of several years to be more inherently resistant to deterioration).

13

Plaintiff here discussed prejudice. He argued Moving Defendants are not prejudiced because all correctional defendants worked together and therefore knew about the incidents giving rise to the suit. (Pl.'s Resp. Opp'n 11.) However, Plaintiff provides no legal support for the proposition that historical awareness of incidents giving rise to a suit weighs against prejudice. Furthermore, there is an obvious difference between historical awareness of incidents giving rise to a suit and timely awareness of the suit itself—which, because of the potential for prejudice associated with lack of timely awareness of a suit, is what is at issue here. Plaintiff refers again to the Fifth Circuit's *Jacobsen v Osborne* opinion in arguing that Defendants are not prejudiced because they are all represented by the same city solicitor's office. (Pl.'s Resp. Opp'n 11 (citing *Jacobson*, 133 F.3d at 320).) Aside from the fact that the Third Circuit has rejected this non-binding argument,[6] it speaks directly to potential constructive notice, not prejudice or staleness. Lastly, Plaintiff argues Moving Defendants are not prejudiced because the case is just getting going. (Pl.'s Resp. Opp'n 11-12.) However, Plaintiff provides no legal support for the proposition that late suit infancy weighs against prejudice and, in fact, late suit infancy is exactly what statutes of limitations are meant to prevent.

Plaintiff alleges he filed grievances related to the events giving rise to his claims. (Third Am. Compl. ¶¶ 46-47, 49.) Such administrative documentation could serve to preserve evidence and therefore may weigh against prejudice. *Steele*, 2004 U.S. Dist. LEXIS 14595 at *6-7. However, other considerations support a finding of prejudice. The alleged events giving rise to Plaintiff's claims against Moving Defendants were of more limited, as opposed to protracted, duration. For example, the events alleged involving Lieutenant Murray spanned only two days. (Third Am. Compl. ¶¶ 23-27 (citing action by Defendant Murray on August 18, 2014 and August

---

[6] *See supra* Section IV.B.1.a.i.

14

19, 2014).) The events alleged involving Sergeant Mooney occurred over a period of several weeks. (Third Am. Compl. ¶¶ 27-34, 39-50 (citing action by Defendant Mooney beginning on August 19, 2014 and lasting until, at the latest, September 14, 2014 and then resuming on October 2, 2014 and lasting until October 24, 2014).) Durations of days or weeks, standing in contradistinction to the multi-year durations found to weigh against prejudice in *Urban*, without more, support a finding of prejudice in this case. *See* 404 F.3d at 775. Furthermore, aside from the grievances filed by Plaintiff, and any related video footage from 2014 that might be discoverable, most of the potential evidence described by Plaintiff in this case is likely to be testimonial, and testimonial evidence disappears at the rate at which human memories fade. *See Branham*, 1987 U.S. Dist. LEXIS 4821 at *34 (considering the rate of disappearance of evidence). The nature of the evidence in this case and the fact that is has been over four years since the events described in Plaintiff's complaint support a finding of prejudice.

Because Plaintiff has not demonstrated that Moving Defendants will not be prejudiced in defending on the merits, Plaintiff has not shown all elements of relation back and Moving Defendants' Motion to Dismiss shall be granted with respect to Lieutenant Murray and Sergeant Mooney. However, because Plaintiff's discussion of prejudice is off-point, and because Moving Defendants did not address prejudice, this Court cannot say that amendment by Plaintiff would be futile.

## V.  Conclusion

For the reasons set forth above, Moving Defendant's Motion to Dismiss is granted. Plaintiff's Third Amended Complaint is dismissed. The dismissal as to Officer Johnson is with prejudice. The dismissal as to Lieutenant Murray, Sergeant Mooney, and all other previously

15

named defendants is without prejudice and Plaintiff is permitted to seek leave to file a Fourth Amended Complaint. Any such motion shall address the deficiencies discussed herein.

An appropriate Order follows.

BY THE COURT:

_____
C. Darnell Jones, II          J.